# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DERRICK CORINTHEAN LANDIS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.7:14-CV-508 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Derrick Corinthean Landis ("Landis") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Landis alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to develop the record, (2) failing to posit proper hypothetical questions to the vocational expert that included all of Landis's functional limitations, and (3) arbitrarily rejecting the opinion of Dr. Jeffrey Luckett. Landis also argues that the decision of the Appeals Council is without adequate explanation.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the record was not adequately developed because records of Landis's mental health treatment were not before the ALJ when he

1

made his decision. As such, I **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 15) and **REMAND** this case for further consideration.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Landis failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Landis bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

## **SOCIAL AND VOCATIONAL HISTORY**

Landis is presently 24 years old and was 21 at the time of the hearing before the ALJ. R. 189. He completed part of the ninth grade before leaving school temporarily. R. 44. The record is unclear regarding when he went back to school and how much more work he was able to complete. <u>Id.</u> He intends to complete his GED but, as of the hearing date, had not signed up for the required classes. R. 45, 56. Landis has never had a job. R. 36. On October 28, 2010, Landis's mother, Ginger Caldwell ("Caldwell"), completed a function report for Landis. R. 224–34. In that report, she noted that Landis spent the majority of his day watching television, talking to his friends, and playing video games. R. 225. She noted he was capable of taking care of most of his personal needs, checking his blood sugar levels, feeding his cat and dogs, doing yard work,

riding a bicycle, using a cell phone and computer, playing ball, and swimming. R. 225–32. Caldwell noted that Landis has difficulty completing tasks and paying attention, that he cannot manage money well because he spends it on things he does not need, that he is easily aggravated and angered, and that pain keeps him from completing some activities. Id.

## CLAIM HISTORY

Landis was born in January of 1992 (Administrative Record, hereinafter "R." at 40), and is considered a younger individual under the Act. 20 C.F.R. §§ 416.963. Landis received DIB as a juvenile and turned eighteen in January of 2010. At that time he was required to re-qualify under the adult disability standards. On January 4, 2011, Landis was notified that he was no longer considered disabled. R. 80–83. Landis requested reconsideration of that determination and a disability hearing officer reviewed his case and again determined he was not disabled. R. 85–112. On April 16, 2013, ALJ Joseph T. Scruton held a hearing to consider Landis's disability claim. R. 29–76. Landis appeared *pro se* at the hearing, which included testimony from Caldwell and vocational expert Robert Jackson. R. 29.

On May 30, 2013, the ALJ entered his decision denying Landis's claims. R. 12–22. The ALJ found that Landis suffered from the severe impairments of Type-I diabetes mellitus, moderate shoulder impingement, mild narrowing of disc space at L3-L4, adjustment disorder with mixed anxiety and depressed mood, and borderline intellectual functioning. R. 14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. The ALJ further found that Landis retained the residual functional capacity ("RFC") to perform less than the full range of light work, with the following limitations. R. 17. Landis could lift up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for up to six hours each in an eight-hour workday; sit for up to six

4

hours in an eight-hour workday; only occasionally reach overhead with both of his arms; understand, remember, and carry out only "short, simple, noncomplex instructions" in a job that required no interaction with the public. Id. The ALJ determined that Landis could work at jobs that exist in significant numbers in the national economy and found that there were a substantial number of jobs that existed in the national economy for someone with Landis's limitations. R. 21.[1] Thus, the ALJ concluded that he was not disabled. Id. On June 22, 2014, the Appeals Council denied Landis's request for review (R. 1), and this appeal followed.

## ANALYSIS

### Development of the Record

Landis argues that the ALJ failed to properly develop the record because he did not obtain records from the Allegheny Highland Community Services Board ("the CSB"). Pl.'s Br. Summ. J. 25. In his brief and at oral argument, Landis represented that these records show that he visited the CSB for mental health treatment on 12 occasions prior to May 16, 2013, and again seven more times between May 16 and July 22, 2014, the date of the Appeals Council decision in this case. Id. at 14. According to Landis, these records "consistently show diagnoses of Bipolar Disorder and Depressive Disorder." Id. Landis argues that the omission of these records erroneously led the ALJ to conclude that Landis had not sought treatment for his mental health issues and that these issues were therefore non-severe.

It is true that the ALJ has a duty to develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173–74 (4th Cir. 1986). "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Id. (citations omitted).

---

[1] Specifically, the ALJ found that Landis was capable of performing light work and sedentary work and that there were approximately 1,600 separate sedentary and light unskilled occupations in eight occupational categories. R. 21. These jobs represented a "substantial number[]" of jobs in the national economy. Id.

The failure of the ALJ "to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944" may amount to neglect of this duty. Id. The ALJ has a heightened duty when presiding over cases with unrepresented parties. Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. N.C. 1980). This heightened duty does not turn the ALJ into a claimant's attorney. Bell v. Chater, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 2015).

The ALJ's duty to develop the record is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va.2009) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)); cf Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011). "The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey, 614 F. Supp. 2d at 693–94 (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship, 2012 WL 259952, at *13 (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

To prevail on the argument that the ALJ failed to develop the record, a claimant must show that there was a gap in the evidence that was prejudicial and must demonstrate that he "could and would have adduced evidence that might have altered the result.'" Blankenship, 2012 WL 259952, at *13 (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

In Landis's case, the ALJ's decision that his mental impairments were not severe was based, in part, on a lack of treatment records. R. 19. The ALJ made this determination after

6

reviewing the record, noticing the gap in treatment records, and making multiple attempts during the hearing to try and determine when Landis last sought mental health treatment. See, e.g., R. 45, 46, 47, 63–64, 67, 68, 69–70. When these attempts were unsuccessful, the ALJ decided to send Landis for a consultative evaluation to assess his mental health issues. R. 70. Once that was done, the ALJ used the examiner's report – which also relied upon a lack of recent mental health treatment – to come to his ultimate conclusion that Landis's mental health impairments were not severe. See R. 668–72 (noting a diagnosis for ADHD, depressive disorder, and bipolar disorder, from January 2009 and March 3, 2011, but not mentioning any treatment for those disorders). Had there actually been no other records of Landis's ongoing mental health treatment, the ALJ's duty to develop the record might have been discharged. However, Landis claims that since the hearing, he has obtained his mental health treatment records from the CSB, and that these records show multiple visits to obtain mental health treatment and diagnoses prior to the hearing with the ALJ. Pl.'s Br. Summ. J. 6. Landis claims these records contradict the ALJ's conclusion that such records did not exist.

The existence of these records is important for two reasons: (1) it calls into question the ALJ's reliance on the lack of treatment records in determining that Landis's mental issues were not severe and (2) it may weaken the opinion evidence of the consultative examiner who also relied upon an absence of these records to come to his conclusions. R. 671. The lack of treatment records at the time of the ALJ's decision was prejudicial to Landis. Landis also claims that had he known the records were missing, he could and would have provided them.

It is not the province of this court to reweigh these additional records and resolve any conflicts that may arise in the evidence. That task is for the ALJ. Therefore, out of an abundance of caution, and in part because the claimant was proceeding pro se at the hearing stage, the case

ought to be remanded for further consideration of the severity of Landis's mental health issues based on the omitted CSB records.

Landis also argues that the ALJ committed two additional errors by (1) formulating a hypothetical question for the vocational expert that misstated Landis's education level, failing to mention Landis's physical impairments to the expert, and relying upon the vocational expert's testimony when the expert did not expressly mention the Dictionary of Occupational Titles, and (2) rejecting the consultative examiner's opinion. Pl.'s Br. Summ. J. 27–28. On remand, it may be appropriate for the ALJ to reexamine these areas of the proceeding after he considers the omitted CSB records. Having determined that the records should be reviewed, it would be premature to issue an opinion on the ALJ's questions to the vocational expert and his treatment of the examiner's opinion when those portions of the case may come out differently after consideration of the additional records. These areas should be revisited as the ALJ sees fit after his consideration of the CSB treatment records.

## CONCLUSION

For the reasons outlined above, this case is **REMANDED** for further consideration of Landis's mental health impairments based on the additional mental health records from the CSB that were discovered after the hearing

        Entered: March 23, 2016

        *Robert S. Ballou*

        Robert S. Ballou
        United States Magistrate Judge